UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **ELAN RICKY-KEONI RADER** | **CIVIL ACTION NO. 21-4201** |
| **VS.** | **SECTION P** |
| | **JUDGE TERRY A. DOUGHTY** |
| **SERGEANT CLAY, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Elan Ricky-Keoni Rader, a prisoner at Cook County Detention Center in Gainesville, Texas, proceeding pro se and in forma pauperis, filed this proceeding on approximately December 7, 2021, under 42 U.S.C. § 1983. He names the following defendants: Sergeant Clay, Bayou Correctional Center ("BCC"), Warden Jonnons Bonney, Crystal Johnson, Sandy, Security Officer Mitchell, Transportation Sergeant Moore, and Security Officer Nash.[1,2] For reasons that follow, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff was confined at BCC when he filed this proceeding, but on February 10, 2022, he was transferred to a different facility. [doc. # 7].

Plaintiff alleges that he was not safe at BCC and that his life was threatened. [doc. # 1, p. 3]. He claims that Sergeant Clay ignored his requests for protective custody and different housing, telling Plaintiff to "'man up'" and "'fight it out[.]'" [doc. # 13, p. 2]. Plaintiff informed Clay "of shanks, contraband, drugs, and threats to [Plaintiff] and other inmates." *Id.* at 3.

---

[1] Plaintiff also refers to Nash as "Kitchen Supervisor Nash."

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

Plaintiff showed Clay his bruises and "marks from being attacked . . . ." *Id.* One inmate "shattered a plastic cup against [Plaintiff's] skull[,]" causing a deep cut. *Id.* Before Plaintiff was transferred to another facility, he maintained that he suffered from anxiety and depression due to his "living conditions" at BCC. [doc. # 1, p. 3].

Plaintiff claims that Security Officer Mitchell also ignored his requests for help. [doc. # 13, p. 3].

Plaintiff claims that Security Officer Mitchell "took bribes from inmates . . . to move in contraband and turn his head the other way for cell phones in the facility." *Id.* He claims that Mitchell violated "LGBTQ rights and committed hate crimes against 'punks[,]'" putting them in harm's way to "teach them a lesson[.]" *Id.* Mitchell allegedly violated inmates' privacy rights by sharing "personal information about inmates to other inmates" in exchange for "chips, money, or sodas . . . ." *Id.*

Plaintiff claims that Mitchell encouraged hate crimes against Plaintiff and others. *Id.*

Plaintiff claims that, because he filed the instant civil rights action, Mitchell retaliated by fabricating "a jacket" and placing a bounty on his head to encourage other inmates to harm him. *Id.* He also claims that Mitchell bribed him after he asked a federal clerk of court on January 18, 2022, for an "ex parte application against Mr. Mitchell in regards to public safety . . . ." *Id.* at 5.

Plaintiff claims that he heard Transportation Sergeant Moore "trying to convince his client that he could not conduct a drug sale at work because it [was] not a good look[.]" *Id.* at 4. He claims that Moore shared "information on current inmates[,]" including their housing assignments and charges. *Id.* He claims that Moore brought contraband into the facility. *Id.* He claims that Moore "constantly informed [him that he] had no rights" while incarcerated and that

he was "a slave" and should not "complain or expect change." *Id.* Moore also "refused to help with [the] grievance process." *Id.*

Plaintiff claims that on multiple occasions Warden Bonney "intercepted, stopped, or reviewed legal and privileged mail[.]" *Id.* Bonney allegedly opened a letter that Plaintiff sent to the Department of Justice, read it, and "paraded it around the dorm . . . ." *Id.* Plaintiff claims that Defendant Sandy occasionally "returned mail to the sender (that was legal and privileged), writing that [inmates] were no longer there on site." *Id.* at 5-6.

Plaintiff claims that Warden Bonney removed inmates' microwave, telephones, tablets, television, and "commissary" in retaliation for "informing the Department of Justice of [inmates'] concerns and requesting [an] intervention and investigation." *Id.* at 4.

Plaintiff claims that BCC lacked "LGBTQ training" and policies to protect LGBTQ inmates. *Id.* at 5.

Plaintiff claims that his "medical needs [were] not being met[.]" [doc. # 1, p. 3]. He is a diabetic, and he alleges that "there [was] no diabetic diet avail[able]." *Id.* That said, he also maintains that BCC forced him to pay for "specialized food[.]" *Id.* He claims that BCC lacked a "diabetic diet even though on paper it shows they have specialized diets." [doc. # 13, p. 5]. He claims that Defendant Crystal Johnson "ignored requests for diabetic friendly options" at the commissary. *Id.* at 6.

Plaintiff asked Kitchen Supervisor Nash "about a diabetic tray[,]" and Nash responded that he "had no clue what that would consist of" but "he would look into it and try to get approval for the change." *Id.* at 6. Nash would allegedly avoid Plaintiff's "follow up" questions. *Id.*

3

Plaintiff also claims that Nash would respond, "well finish cooking it in the microwave," when inmates asked him about uncooked chicken and "half raw" bread. *Id.* Plaintiff maintains that he "got food poisoning from uncooked food." *Id.*

In his initial pleading, Plaintiff asked the Court to: (1) transfer him "to a state-run facility"; (2) "allow for [his] medical needs"; (3) order "LGBTQ training for all center staff" and "retraining of staff"; (4) order an "internal audit/staff background checks"; and (5) award "restitution" for his pain and suffering. [doc. # 1, p. 4].

In an amended pleading, Plaintiff asks the Court to: (1) recommend that the BCC menu be reviewed and composed by a dietician/nutritionist; (2) recommend all food service staff to be "food protection mgmt. certified"; (3) order officials at BCC to provide diabetic meals; (4) recommend that "LIH" investigate BCC employees; (5) recommend "more security cameras and emergency communications be installed for inmate use"; (6) "recommend direct supervision by security officers" in dormitories; (7) "recommend replacement of [the] current warden"; (8) "recommend retraining on LGBTQ rights . . . ."; (9) "recommend drug testing on all current employees and correct administrative procedure . . . on positive results"; (10) award compensation for mental abuse, physical harm, and post-traumatic stress disorder; (11) reimburse him for "all medical and commissary costs"; and (12) charge defendants with crimes for violating "privilege mail laws . . . ." [doc. # 13, pp. 7-8].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is

subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

5

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Injunctive Relief**

Plaintiff seeks multiple forms of injunctive relief, asking the Court to order defendants at BCC to (1) provide medical care; (2) undergo "LGBTQ training" or re-training; (3) implement a menu approved by a dietician/nutritionist; (4) certify food service staff in "food protection" management; (5) provide safe meals for diabetic inmates; (6) install "more security cameras and emergency communications"; (7) directly supervise inmates in dormitories; (8) test employees for drugs; and (9) transfer him "to a state run facility[.]"

Plaintiff, however, is no longer confined in BCC.  Thus, his requests for injunctive relief concerning BCC and officials at BCC are moot.[4] *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (determining that an inmate's transfer to a different unit rendered claims for declaratory and injunctive relief relating to environmental conditions at the original unit moot); *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017) ("By the time Coleman filed his original complaint, he had been transferred from the Lincoln Parish Detention Center ('LPDC') to the Jefferson Parish Detention Center. That transfer mooted his claims for declaratory and injunctive relief . . . and the possibility of his transfer back to the LPDC is too speculative to warrant relief."); *see also North Carolina v. Rice*, 404 U.S. 244, 246 (U.S. 1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").

The Court should deny and dismiss Plaintiff's requests for injunctive relief.

---

[4] Plaintiff does not allege or suggest that there is a reasonable, demonstrable probability that he will be transferred back to BCC.  *See Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir. 1975); *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

**3. Separation of Powers**

Plaintiff asks the Court to investigate defendants or to order others to investigate defendants. He writes specifically that he wants "internal audit/staff background checks" and an investigation by the "LIH." He also wants to charge defendants with crimes for violating "privilege mail laws . . . ."

Investigating and prosecuting possible criminal activities lies in the exclusive jurisdiction of the executive branch of government. In the federal context for example, prosecuting criminal actions lies in the discretion of the Attorney General of the United States and duly authorized United States Attorneys. In Louisiana, prosecuting criminal actions lies in the discretion of the Louisiana Attorney General and the various District Attorneys. *See* LA. CODE. CRIM. PROC. arts. 61 and 62. Accordingly, to the extent Plaintiff asks the Court to investigate defendants or charge defendants with crimes, the Court should dismiss the requests as frivolous.[5]

**4. Termination of Employment**

Plaintiff asks the Court to "recommend replacement of [the] current warden[.]" Federal courts, however, are not prison managers or personnel directors. *See Hurrey v. Unknown TDCJ Corr. Officer A*, 2009 WL 3645638, at *2 (N.D. Tex. Nov. 4, 2009). Courts "will not interfere in

---

[5] Plaintiff should, if he wishes, direct his concerns to a local, state, or federal law enforcement agency. That said, Plaintiff should be aware that if a prosecuting authority investigates and chooses not to file charges, "[t]he decision to file or not file criminal charges . . . will not give rise to section 1983 liability." *Oliver*, 904 F.2d at 281. The courts "allow the government discretion to decide which individuals to prosecute, which offenses to charge, and what measure of punishment to seek." *U.S. v. Lawrence*, 179 F.3d 343, 348 (5th Cir. 1999); *see, e.g., Hymel v. Champagne*, 2007 WL 1030207, *2 (E.D. La. 2007) (denying a plaintiff's request to investigate a correctional center: "this Court has no authority to issue such an order and plaintiff has no constitutional right to such an order. Moreover, to the extent that plaintiff is alleging that a criminal investigation should be instituted, such investigations are solely within the purview of law enforcement authorities.").

the administration of prisons absent an abuse of the wide discretion allowed prison officials in maintaining order and discipline." *Royal v. Clark*, 447 F.2d 501, 501-02 (5th Cir. 1971). The Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." *Shaw v. Murphy*, 532 U.S. 223, 230 (2001); *see Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Here, accordingly, the Court should deny Plaintiff's requested relief.

**5. Food Poisoning**

Plaintiff claims that Kitchen Supervisor Nash responded, "well finish cooking it in the microwave," when inmates asked him about uncooked chicken and "half raw" bread. [doc. # 13, p. 6]. Plaintiff maintains that he and other inmates "got food poisoning from uncooked food." *Id.* Plaintiff adds that Nash's "response [was,] 'you are just going to throw it away anyway, why bother[?]' [sic]." *Id.*

"'[A] single incident of unintended food poisoning, whether suffered by one or many prisoners at an institution, does not constitute a violation of the constitutional rights of the affected prisoners.'" *Doolittle v. Jarvis*, 387 F. App'x 499, 500 (5th Cir. 2010) (*quoting George v. King*, 837 F.2d 705, 707 (5th Cir. 1988)); *Hyder v. Perez*, 85 F.3d 624 (5th Cir. 1996) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."). While a "single incident of food poisoning or finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected[,]" evidence "of frequent or regular injurious incidents of foreign objects in food, on the other hand, raises what otherwise might be merely isolated negligent behavior to the level of a constitutional violation." *Green v. Atkinson*, 623 F.3d 278, 281 (5th Cir. 2010).

In *Doolittle*, the Fifth Circuit affirmed a district court's holding that the plaintiff failed to state a plausible claim where he "merely alleged a single incident of unintended food poisoning[,]" failed to point "to any allegation to the effect that prison officials intended to cause harm," and did not identify "a factual allegation regarding any other incident of food poisoning." *Id.*

Here, Plaintiff does not allege that Nash knowingly harmed him, intentionally harmed him, or was deliberately indifferent to a substantial risk of serious harm. Nor does he allege that there were frequent or regular injurious incidents of food poisoning, foreign objects in the food, or tainted ingredients in the food. At best, Plaintiff's claim sounds in negligence, but negligence is not actionable under Section 1983.[6]

**6. Diabetic Meals**

Plaintiff is a diabetic, and he alleges that "there [was] no diabetic diet avail[able]" at BCC. He seeks reimbursement for his commissary costs, tacitly alleging that he was forced to buy diabetic-safe food from the commissary.

    A. BCC

Plaintiff first faults BCC for forcing him to pay for "specialized food[.]" He claims that BCC lacked a "diabetic diet even though on paper it shows they have specialized diets."

Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes

---

[6] *See Daniels v. Williams*, 474 U.S. 327, 336 (1986) (holding that the United States Constitution does not address injuries inflicted by governmental negligence); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (recognizing that plaintiffs must "demonstrate culpability beyond mere negligence or even gross negligence.").

personality, such as a corporation or partnership." LA. CIV. CODE art. 24. BCC does not qualify as a juridical person. Accordingly, the Court should dismiss Plaintiff's claims against BCC.

B. Defendant Crystal Johnson

Plaintiff claims that Defendant Crystal Johnson "would frequently add items to commissary but ignored requests for diabetic friendly options." [doc. # 13, p. 6].

To state a plausible claim of denied medical care, a plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Here, Plaintiff's only cognizable request for relief is for reimbursement for his commissary costs. As above, he tacitly alleges that he was forced to buy diabetic-safe food from the commissary. Plaintiff, however, does not seek reimbursement for the money he spent at the commissary *because* of Johnson's alleged failure to stock certain items at the commissary. He does not claim that Johnson was responsible for the lack of safe meals for diabetic inmates at BCC; rather, he claims only that Jonson ignored "requests" to add "diabetic friendly options" to

11

the commissary. Thus, Johnson was not responsible for forcing Plaintiff to buy specialized food from the commissary or elsewhere.

Second, Plaintiff maintains that the commissary was his only recourse for obtaining diabetic-safe food. Thus, Johnson did not cause Plaintiff's alleged health deprivation. It appears that Plaintiff claims that Johnson did not stock his preferred foods. While he may have found the lack of selection unpleasant, the scenario Plaintiff describes is de minimis and does not amount to a constitutional violation.

Further, Plaintiff does not specify who asked Johnson to provide food safe for diabetics at the commissary. He only states that Jonson would ignore "requests." Even assuming *Plaintiff* asked Johnson for certain foods, he does not allege that he informed Johnson that he was diabetic, that he required diabetic-safe food, that he could only obtain diabetic-safe food at the commissary, or that he was at risk of harm if Johnson failed to help him. In this respect, he does not plausibly allege that Johnson knew of and disregarded a substantial risk of serious harm. Similarly, Plaintiff does not plausibly allege that Johnson intended to punish him by ignoring his (or others') requests.

C. <u>Kitchen Supervisor Nash</u>

Plaintiff asked Kitchen Supervisor Nash "about a diabetic tray[,]" and Nash allegedly responded that he "had no clue what that would consist of" but "he would look into it and try to get approval for the change." Plaintiff claims that Nash would also avoid his "follow up" questions.

Nash's response that he "would look into it and try to get approval for the change" does not reflect deliberate indifference or an intent to punish Plaintiff. Further, he does not plausibly allege that Nash knew of and disregarded a substantial risk of serious harm by avoiding his

"follow up" questions. He does not allege, for instance, that he informed Nash that he required diabetic-safe food or that he would suffer serious adverse health effects if Nash did not provide a "diabetic tray."

The Court should dismiss these claims and associated requests for relief.

### 7. Reimbursement for Medical Costs

Plaintiff seeks reimbursement for his medical costs. His request, however, is conclusory: he does not join the request to any plausible claim, identify a responsible defendant, or explain how his payment of medical care costs violated federal law or his constitutional rights.

Moreover, "There is . . . no general constitutional right to free health care[,]" and "[c]harging inmates for medical care, furthermore, is not per se unconstitutional." *Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1115 (N.D. Tex. 2001) (*cited with approval by Morris v. Livingston*, 739 F.3d 740, 749 (5th Cir. 2014) (reasoning that the plaintiff did not plead "facts to show that the health care services fee" he paid acted "as a functional denial of medical care . . . .")). "Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay such co-payment does not present a constitutional claim." *Farrakhan v. Johnson*, 2009 WL 1360864, at *5 (E.D. Va. May 13, 2009) (unpublished) (*cited with approval by Morris*, 739 F.3d at 748). Here, Plaintiff does not claim that he was refused care because he could not pay; rather, he simply claims that he was charged. The Court should dismiss this claim and request for relief.

### 8.. Compensatory Relief

Plaintiff's only remaining request for relief is for monetary compensation. Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in

13

section 2246 of Title 18)." "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "The 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Here, Plaintiff "brought" this action when he was incarcerated in BCC. Of Plaintiff's remaining claims, he only offers one concerning physical harm. He claims that Defendants Clay and Mitchell failed to protect him from harm. He showed Clay his bruises and "marks from being attacked[.]" An inmate "shattered a plastic cup against [his] skull[,]" causing a deep cut.

Plaintiff does not, however, allege that he suffered physical harm *because* defendants failed to protect him. Instead, he suggests that he told (or showed) defendants that he suffered physical harm and then asked defendants to protect him from further *risk* of harm by moving him to protective custody or transferring him to a different facility.

Plaintiff alleges that he suffered from anxiety and depression due to his "living conditions" at BCC. [doc. # 1, p. 3]. To the extent he alleges that defendants caused him mental, emotional, or de-minimis physical injuries, he may not recover monetary relief. *See Winding v. Sparkman*, 423 F. App'x 473, 474 (5th Cir. 2011) ("A failure-to-protect claim that fails to allege any resulting physical injury does not state an Eighth Amendment violation entitling a prisoner to compensatory damages."); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).

As to Plaintiff's remaining claims, he does not allege that he suffered any physical injury—or any other compensable injury or damage—*because* of defendants' alleged actions.[7]

The Court should dismiss Plaintiff's remaining requests for compensation/reimbursement. The Court should also dismiss Plaintiff's remaining claims because he does not seek any cognizable relief.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Elan Ricky-Keoni Rader's requests for injunctive relief be **DISMISSED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R.**

---

[7] Above, the undersigned analyzed the merits of Plaintiff's claims concerning diabetic-safe meals and healthcare costs because Plaintiff sought potentially cognizable relief: compensation/reimbursement for the money he spent on commissary food and healthcare. In other words, Section 1997e(e) does not foreclose the claims because Plaintiff did not seek compensation *only* for mental or emotional injuries. Similarly, Section 1997e(e) does not foreclose Plaintiff's claim concerning improperly prepared food because Plaintiff alleged that he suffered a physical injury, food poisoning. The undersigned therefore analyzed the merits of that claim as well.

**Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 26th day of April, 2022.

_____
Kayla Dye McClusky
United States Magistrate Judge